UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 10-21-GWU

GREGORY CHAFFINS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Gregory Chaffins, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic pain syndrome secondary to a cervical cord injury and degenerative disc disease of the lumbar spine, a history of alcoholic cirrhosis, hepatitis, recurrent pancreatitis, and a history of alcohol dependence and abuse.  (Tr. 11).  The ALJ concluded, however, that without consideration of substance abuse, Mr. Chaffins retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-23).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of lifting 50 pounds occasionally and 25 pounds frequently, could occasionally crawl and climb ladders, ropes, and scaffolds, and needed to avoid even moderate exposure to vibrations and hazards of work involving machinery and heights. (Tr. 46).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 46-7).

On appeal, this court must determine whether the ALJ's decision is supported by substantial evidence.

The plaintiff alleged disability partly due to physical problems with his neck and lower back but also cited alcoholism and bipolar disorder. (Tr. 152). On appeal, the plaintiff does not challenge the ALJ's finding that he had no mental limitations without regard to substance abuse. (Tr. 16-19). He focuses his appeal only on the technical issue of whether the ALJ had a duty to recontact the plaintiff's treating source after refusing to accept the treating source's restrictions.

The evidence shows that the plaintiff was admitted to the Cabell Huntington Hospital in Huntington, West Virginia on October 12, 2007 following a motor vehicle accident. (Tr. 526). A neurosurgical consultation showed a compression fracture of the C5 vertebra and a central cord syndrome with related parasthesia and weakness of the upper extremities. (Tr. 531). The neurosurgeon, Dr. Charles Shuff, recommended an anterior cervical discectomy and fusion. (Tr. 533). Apparently, Dr. Shuff was agreeing with another consultant, Dr. Bryan R. Payne, who had also examined the plaintiff and recommended surgery, although the actual surgical recommendation does not appear to be in the hospital notes. (Tr. 534-6). Drs. Payne and Shuff performed a C5-C6 anterior cervical discectomy and fusion with allograft on October 15, 2007. (Tr. 537-41).

No office notes from Dr. Payne are contained in the transcript. The plaintiff testified that Dr. Payne was his treating physician, although he could not afford to

see him and he was simply refilling prescriptions.  (Tr. 31).  Mr. Chaffins lived in Hazard, Kentucky, and found it difficult to go to Huntington, West Virginia to see a doctor.  (Tr. 32).  At the time of the March 3, 2009 administrative hearing, he had not seen Dr. Payne for "a few months."  (Tr. 40).[1]

The plaintiff submitted a one-page medical report, apparently from Dr. Payne,[2] dated May 14, 2008.  (Tr. 700).  The plaintiff had been seen between December 7, 2007 and April 18, 2008.  (Id.).  His diagnosis was given as C5-C7 closed fracture with central cord syndrome with an "unknown" duration.  He had been given referrals to pain management and neurology, along with medications, which were mildly effective.  (Id.).  In terms of functional restrictions, Mr. Chaffins could not lift or carry anything over five pounds, or walk or stand more than ten minutes, but could sit as tolerated.  (Id.).  Long-distance travel was not allowed.

Subsequently, the plaintiff underwent a one-time consultative evaluation by Dr. Mark V. Burns on April 29, 2009.  Dr. Burns did find a limitation of straight leg

---

[1] Although the hospitalization record clearly shows that the physician's name was Bryan Payne, the transcript contains qualifications from a Dr. Mary Payne in Huntington, West Virginia (Tr. 759) and the ALJ appeared to be under the impression that Dr. Mary Payne was Mr. Chaffins's physician; however, the plaintiff insisted that Dr. Payne was a man and his name was not Mary.  (Tr. 41).  Counsel for the plaintiff also refers to Dr. Mary Payne as the treating source in his brief, but since there are no records from Dr. Mary Payne and the plaintiff's testimony is clear, the court agrees with the defendant that Dr. Bryan Payne was the treating source.

[2] The report appears to have been initialed, and the writing is unclear, although it could possibly say "BRP," Dr. Bryan R. Payne's initials.  (Tr. 700).  The ALJ did not question the authenticity of the report.

raising in a lumbar extension and flexion, but otherwise there was no evidence of scoliosis, tenderness, or spasms, Mr. Chaffins had normal motor strength, and could perform gait and station, heel, toe, and tandem walk, and knee squat with minimal difficulty. (Tr. 764-5). Dr. Burns opined that Mr. Chaffins would be temporarily limited in activities involving moving about and traveling, but should improve within six months in these areas with physical therapy. (Tr. 765).

A state agency physician, Dr. H. Anzures, had previously reviewed the record on June 10, 2008 and opined that the plaintiff could perform medium level exertion with the non-exertional restrictions found by the ALJ and repeated in the hypothetical question. (Tr. 722-8).

The ALJ declined to accept Dr. Payne's restrictions because they were made "prior to twelve months status post injury." (Tr. 19). Inferentially, the ALJ found that the plaintiff's condition had improved by the time Dr. Burns conducted his examination. Since Dr. Burns was the only examining source to offer an opinion after twelve months had elapsed from the date of the injury, substantial evidence would support the ALJ's decision to give his opinion controlling weight.[3]

Citing 20 C.F.R. § 404.1512(e), the plaintiff asserts that the ALJ should have recontacted Dr. Payne. This section of the Commissioner's regulations states that a treating physician will be recontacted by the defendant when the evidence

---

[3]The ALJ actually gave the plaintiff the benefit of the doubt in adopting the slightly more restrictive assessment of Dr. Anzures.

received is inadequate to determine whether a claimant is disabled.  It gives as an example: "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical laboratory and diagnostic techniques."  20 C.F.R. § 404.1512(e)(1).  The plaintiff alleges only that the evidence was inadequate and cites the unpublished case of Littlepage v. Chater, 134 F.3d 371, 1998 WL 24999 (6th Cir. 1998), as persuasive authority.  In Littlepage, there was a conflict between a treating physician's office notes and a formal functional capacity assessment, which the ALJ had resolved by following the office notes.  The Sixth Circuit concluded that the ALJ's actions were appropriate and there was no requirement to recontact the treating source "in view of the fact that all of [his] treatment notes were already in the record and were used to make a determination regarding Littlepage's mental impairment."  Id. at 3.  The plaintiff argues that in the present case, recontacting Dr. Payne would not be futile because it would give him an opportunity to provide an assessment more than twelve months status post injury.

The regulation provides for recontacting the treating source for limited reasons.  In the present case, the plaintiff does not argue that the one report submitted by Dr. Payne did not contain necessary information; rather, he argues that an updated report should have been obtained, a procedure which appears to

be outside of the ambit of § 404.1512(e). Ultimately, it is the plaintiff's responsibility to prove his own case, and counsel for the plaintiff, who is very experienced in Social Security matters, was certainly aware of the twelve month durational requirement. Essentially, it is the plaintiff's responsibility to prove his own case, and the plaintiff could easily have recontacted Dr. Payne at any time, since the administrative decision was not issued until almost two years after the motor vehicle accident and approximately 16 months after Dr. Payne's opinion was given. The court declines to expand § 404.1512(e) to create an open-ended responsibility on the part of the ALJ to develop the plaintiff's case.

The decision will be affirmed.

This the 18th day of October, 2010.

**Signed By:**
*G. Wix Unthank*
**United States Senior Judge**